**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

RICHARD SIERRA, ET AL.                    CIVIL NO. 6:17-CV-1002

VERSUS                                    JUDGE ROBERT G. JAMES

HALLIBURTON ENERGY                        MAGISTRATE JUDGE HANNA
SERVICES, INC., ET AL.

<u>RULING</u>

Two motions in this matter were referred to the Magistrate Judge for Report and
Recommendation ("R&R"): (1) a Motion to Dismiss, or Alternatively to Stay and Compel
Arbitration, or in the Further Alternative for a More Definite Statement [Doc. No. 5] filed by
Defendant Halliburton Energy Services, Inc. ("Halliburton"); and (2) a Motion to Remand [Doc.
No. 11] filed by Plaintiffs Richard Sierra, Chad Venable, and LOS, Inc. The Magistrate Judge has
now issued the R&R [Doc. No. 53], as well as a supplemental R&R [Doc. No. 59], wherein he
recommends the Motion to Remand be granted and the Motion to Dismiss be denied as moot.
[Doc. No. 53 at 17-18; Doc. No. 59 at 2-3]. Halliburton objects to the Magistrate Judge's
recommendation [Doc. Nos. 55, 60], and Plaintiffs have filed responses to the objections. [Doc.
Nos. 56, 61] For the reasons that follow, the Court DECLINES TO ADOPT the Report and
Recommendation and DENIES the motion to remand.

**I.      Background**

This lawsuit originated in state court, when Plaintiffs sued Halliburton and an Auditor
employed by Halliburton for damages allegedly resulting from an audit of LOS performed by
Defendants. The substance of the Petition reads as follows:

> 2.      LOS, Inc. entered into a Master Purchase Agreement (hereinafter referred
> to as "Agreement") with Halliburton for NDT (non-destructive testing).

3. On or about June 1, 2013, Auditor, through Halliburton, performed an audit of LOS, Inc.'s practices and procedures, and informed LOS, Inc. that it was non-compliant.

4. LOS, Inc. was not provided with any written documentation or written score/result of the audit and the alleged deficiencies were never identified, if same truly existed.

5. Halliburton arbitrarily, capriciously and without giving LOS, Inc. an opportunity to cure any alleged deficiencies, awarded LOS, Inc. an audit score of zero and posted this audit score on Halliburton's website, which was viewable by all of Halliburton's customers.

6. In response, LOS, Inc. retained the services of a third party to investigate the audit and the basis for the score, but Halliburton refused to respond to said requests.

7. Based on said investigation, the audit was false, as was said score posted by Halliburton.

8. As a consequence of the false score given by Auditor and Halliburton, LOS, Inc. lost all existing clients and work.

9. As a by-product of the conduct of Halliburton and Auditor, LOS, Inc.'s business was destroyed and all non-destructive testing had to be discontinued.

10. Halliburton is vicariously liable for the actions and/or inactions of its employee, Auditor, who was acting in furtherance of Halliburton's business enterprise and /or in furtherance of Halliburton's business mission, through the doctrine of *respondeat superior* for the damages suffered by LOS, Inc.

11. Upon information and belief and at all times relevant herein, the aforementioned incident was caused totally, solely and/or concurrently through the intentional actions and/or fault of the Defendants in the following non-exclusive particulars, to-wit:

    a. Breach of Contract;

    b. Breach of Fiduciary Duty;

    c. Tortious Interference with Contract;

| | d. | Fraud; |
|---|---|---|
| | e. | Misrepresentation; |
| | f. | Business Defamation; |
| | g. | Loss and Destruction of Business; |
| | h. | Deceptive Trade Practices and Unfair Competition; and |
| | i. | Antitrust Violations. |

[Doc. No. 1-1 at 2-3].

Exactly four years after the Auditor informed LOS that his audit showed LOS to be "non-compliant," Plaintiffs filed this suit in the 15th Judicial District Court, Lafayette Parish, Louisiana. Halliburton removed the suit to this Court, alleging subject-matter jurisdiction exists pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds the jurisdictional minimum and the parties are diverse in citizenship when the citizenship of the Auditor is disregarded, whom Halliburton asserts was improperly joined. Generally, Halliburton contends: (1) Plaintiffs cannot recover against the Auditor with regard to any contractual claims, as he was not a party to the Master Purchase Agreement; (2) Plaintiffs cannot recover against the Auditor with regard to any tort claims, because the Auditor did not owe any duty to Plaintiffs and Halliburton is vicariously liable for the Auditor's actions and omissions; and (3) Plaintiffs cannot recover against the Auditor with regard to any tort claims, because all such claims have prescribed. [Doc. No. 16]

The Magistrate Judge recommends granting the Motion to Remand, finding Halliburton has "not met its burden of showing that the auditor was improperly joined as a defendant in this action," and therefore Halliburton has failed to show the parties are diverse in citizenship. [Doc. No. 53 at 17]. As stated in the R&R, "[a]n issue has been raised in this lawsuit regarding whether

Texas law or Louisiana law should apply."[1] *Id.* at 14. The Magistrate Judge found that issue need not be resolved at present, as "the result is the same under the laws of both states." *Id.* The Magistrate Judge ultimately concluded:

> Viewing the allegations of the petition in a light most favorable to the plaintiffs, as must be done in resolving this motion, even though the auditor was employed by Halliburton, there is a reasonable possibility that he might be found liable for intentional misrepresentations or intentional fraud in the confection of the audit report that was beyond the scope of his employment with Halliburton and served only his own personal interests. In that case, Halliburton might not be found vicariously liable for his actions.

[Doc. No. 53 at 16; *see also* Doc. No. 59 at 2].[2]

Halliburton objects to the Magistrate Judge's recommendation, arguing that while the allegations set forth in the Petition may be sufficient to establish "a *theoretical possibility* of recovery," the allegations do not show there is a "reasonable possibility of recovery" because Plaintiffs have failed to set forth sufficient factual allegations to state any claim against the Auditor. [Doc. No. 55 at 5, 8 (emphasis in original)]. Accordingly, Halliburton contends the Auditor was improperly joined to defeat diversity jurisdiction in this matter. [Doc. No. 55 at 4].

## II.    Applicable Law

In reviewing a dispositive pretrial matter assigned to a magistrate judge, "The district judge

---

[1]The Court notes the parties do not directly raise the issue of the applicability of Texas law. Rather, Plaintiffs merely cite the Court to Texas jurisprudence (as well as Louisiana jurisprudence) in support of their claims. The only connection to Texas the Court has identified is found in the Master Purchase Agreement between Halliburton and LOS, which states that for "work performed in the USA, but not offshore in the Gulf of Mexico, this Agreement will be governed by the laws of Texas, exclusive of conflict of laws principles." [Doc. No. 5-2 at 7].

[2]The Magistrate Judge additionally found the claim for intentional fraud under Texas law has not prescribed, and the claim for intentional fraud or intentional breach of fiduciary duty under Louisiana law may not have prescribed, as such claims "sometimes have a ten-year prescriptive period." [Doc. No. 53 at 17].

must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." FED. R. CIV. P. 72(b)(3); *see also Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016).

When a suit is removed from state court, the removing party bears the burden of proving federal jurisdiction exists over the matter. *Shearer v. Southwest Service Life Ins. Co.*, 516 F.3d 276, 278 (5th Cir. 2008). The federal removal statute, 28 U.S.C. § 1441(a) allows for the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." Subsection (b) specifies that suits arising under a court's diversity jurisdiction "may not be removed if any of the parties in interest *properly* joined and served as defendants is a citizen of the State in which such action is brought."[3] *Id.* (emphasis added). To establish diversity jurisdiction, the removing party "must demonstrate that all of the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied."[4] *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004). In this matter, Plaintiffs LOS and Richard Sierra and the Auditor employed by Halliburton are all citizens of Louisiana. [Doc. No. 53 at 8-11]. Accordingly, unless the Auditor was improperly joined, there is an absence of diversity between the parties.

To establish improper joinder, a removing party must prove either actual fraud in the pleading of jurisdictional facts, or the "inability of the plaintiff to establish a cause of action against

---

[3]*See also* 28 U.S.C. § 1359 ("A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.")

[4]The Court agrees with the Magistrate Judge's finding that the amount in controversy is satisfied for purposes of diversity jurisdiction in this matter. [*See* Doc. No. 55 at 6-8].

the non-diverse party in state court." *Smallwood* at 573 (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)). In this matter, there is no allegation of actual fraud in the naming of the Auditor as a Defendant. Accordingly, under the second method of proving improper joinder, a removing party must demonstrate "that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.*; *see also Campbell v. Stone Ins. Inc.*, 509 F.3d 665, 669 (5th Cir. 2007). "This means that there must be a reasonable possibility of recovery, not merely a theoretical one." *Campbell* at 669 (quoting *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005)).

Generally, the standard for evaluating a claim of improper joinder under the second method is similar to that used in evaluating a motion to dismiss for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6). *Id.*; *Smallwood* at 573. In conducting this inquiry, the court looks to federal pleading standards and evaluates all of the factual allegations set forth in the complaint in the light most favorable to the plaintiff. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 208 (5th Cir. 2016). "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Smallwood* at 573. Because the doctrine of improper joinder is a "narrow exception" to the rule of complete diversity, "the burden of persuasion on a party claiming improper joinder is a 'heavy one.'" *Campbell* at 669 (quoting *McDonal* at 183).

Under the 12(b)(6) standard, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir.2011) (internal quotation marks omitted). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. However, conclusory allegations and unwarranted deductions are not accepted as true, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint which merely "tenders naked assertions devoid of further factual enhancement" will not survive a motion to dismiss. *Iqbal* at 678 (internal quotation marks and alterations omitted). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and the pleading must contain something more than a statement of facts which merely creates a suspicion of a legally cognizable right of action. *Twombly* at 555. "[A] single valid cause of action against in-state defendants (despite the pleading of several unavailing claims) requires remand of the entire case to state court." *Gray ex re. Rudd v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400, 412 (5th Cir. 2004).

## III.    Analysis

### A.    Breach of Contract

The Petition in this matter does not allege the Auditor was a party to any implied or express contract of any sort with Plaintiffs. Accordingly, the Court finds no basis for Plaintiffs' claim against the Auditor for breach of contract. *See e.g. Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999).

### B.    Breach of Fiduciary Duty

Pursuant to Louisiana law, "for a fiduciary duty to exist, there must be a fiduciary relationship between the parties." *Scheffler v. Adams and Reese, LLP*, 950 So.2d 641, 647 (La.

2007). A fiduciary relationship exists between parties "when confidence is reposed on one side and there is resulting superiority and influence on the other." *Id.* (internal quotation marks omitted). "The defining characteristic of a fiduciary relationship . . . is the special relationship of confidence or trust imposed by one in another who undertakes to act primarily for the benefit of the principal in a particular endeavor." *Id.* at 648. The elements of a claim for breach of fiduciary duty under Louisiana law include: (1) the existence of a fiduciary duty, (2) a violation of that duty by the fiduciary, and (3) damages resulting from the violation. *U.S. Small Bus. Admin. v. Beaulieu*, 75 Fed.Appx. 249, 252 (5th Cir.2003) (citing *Omnitech International, Inc. v. The Clorox Co.*, 11 F.3d 1316, 1330 (5th Cir. 1994); *Brockman v. Salt Lake Farm Partnership*, 768 So.2d 836, 844 (La.App. 2000)).

Texas law recognizes two types of fiduciary relationships. *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir.2007). One is a formal fiduciary relationship, which "arises as a matter of law and includes the relationships between attorney and client, principal and agent, partners, and joint venturers." *Id.* (quoting *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 508 (Tex.App. 2003). The second is an informal fiduciary relationship, which "may arise where one person trusts in and relies upon another, whether the relationship is a moral, social, domestic, or purely personal one." *Id.* (quoting *Jones v. Blume*, 196 S.W.3d 440, 449 (Tex.App. 2006)). Under Texas law, "[t]he elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." *Id.* (quoting *Jones* at 447).

The Petition in this matter fails to allege any facts indicating a fiduciary relationship existed

between Plaintiffs and Halliburton's Auditor. Accordingly, the Court finds Defendants have demonstrated that there is no reasonable possibility of recovery by the Plaintiffs against the Auditor for breach of a fiduciary duty.

### C. Tortious Interference With Contract

The Louisiana Supreme Court has "recognized a very narrow cause of action for tortious interference with contracts." *American Waste & Pollution Control Co. v. Browning-Ferris, Inc.*, 949 F.2d 1384, 1386 (5th Cir. 1991) (citing *9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228 (La. 1989). As discussed by the Fifth Circuit, in *9 to 5 Fashions v. Spurney*, the Louisiana Supreme Court "specifically recognized only a corporate officer's duty to refrain from intentional and unjustified interference with the contractual relation between his employer and a third person and disavowed any intention to adopt whole and undigested the fully expanded common law doctrine of interference with contract." *Huffmaster v. Exxon Co.*, 170 F.3d 499, 504 (5th Cir. 1999). The Fifth Circuit interprets *Spurney* to require that the defendant owe a "narrow, individualized duty" to the plaintiff in order for the plaintiff to have a viable claim for tortious interference with a contract. *Petrohawk Properties, L.P. v. Chesapeake Louisiana, L.P.*, 689 F.3d 380, 396 (5th Cir. 2012). The elements of such a cause of action are:

> (1) the existence of a contract or a legally protected interest between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome; (4) absence of justification on the part of the officer; (5) causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought about by the officer.

*Spurney* at 234. Clearly, Plaintiff has not satisfactorily pleaded the foregoing elements.

Texas jurisprudence recognizes "a cause of action for tortious interference against any third

person (a stranger to the contract) who wrongly induces another contracting party to breach the contract." *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995). "By definition, the person who induces the breach cannot be a contracting party." *Id.* To state a claim of tortious interference with contract under Texas law, a plaintiff must establish: "(1) the existence of a contract subject to interference, (2) the occurrence of an act of interference that was willful and intentional, (3) the act was a proximate cause of the plaintiff's damage, and (4) actual damage or loss occurred." *Udeigwe v. Texas Tech Univ.*, 2018 WL 2186485, at *4 (5th Cir. 2018) (quoting *Holloway v. Skinner*, 898 S.W.2d 793, 795-96 (Tex. 1995)). "A contracting party's agent or employee acting in the party's interest cannot interfere with the party's contract." *Wilkerson v. University of North Texas*, 223 F.Supp.3d 592, 609 (E.D.Tex. 2016) (citing *Holloway* at 798); *see also Alviar v. Lillard*, 854 F.3d 286, 289 (5th Cir. 2017) (applying concept to plaintiff's supervisor). "When the defendant is both a corporate agent and the third party who allegedly induced the corporation's breach, the second element is particularly important." *Alviar* at 289 (quoting *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 402 (5th Cir. 2013)). "Even an agent's mixed motives–benefitting himself and the corporation–are insufficient." *Id.* (quoting *Mumfrey* at 403). In such a case, "a plaintiff must show that the agent acted solely in his own interests." *Id.* (quoting *Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 457 (Tex. 1998)).

In this matter, Plaintiffs do not plead any facts indicating that the Auditor was acting *solely* in his own interest. Indeed, Plaintiffs do not set forth any facts indicating the Auditor's alleged conduct benefitted the Auditor personally, even in part. *See e.g. Holloway* at 798 ("[T]here must be evidence that [the agent] personally benefitted from decisions that were inconsistent with his

duty to the Corporation...."). "If a corporation does not complain about its agent's actions, then the agent cannot be held to have acted contrary to the corporation's interests." *Mumfrey* at 403. In this matter, Plaintiffs have made no allegation that the Auditor was acting to serve his own personal interests, or that Halliburton complained about the Auditor's performance of his audit. Accordingly, Plaintiffs have failed to adequately plead that the Auditor tortiously interfered with the contract between Halliburton and LOS, Inc.

### D.     Fraud

Pursuant to Louisiana law, "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." LA. CIV. CODE art. 1953; *see also Firefighters' Retirement System v. Grant Thornton, L.L.P.*, 894 F.3d 665, 674 (5th Cir. 2018). To prevail on a claim of fraud under Texas law, a plaintiff must prove: (1) a material representation was made that was false; (2) the speaker knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the representation was made with the intention that it be acted upon by the other party; (4) the party actually and justifiably acted in reliance upon the representation and thereby suffered injury. *Ernst Young, LLP v. Pac. Mutual Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex.2001).

The Court finds Plaintiffs have failed to state a claim against the Auditor for fraud that survives a Rule 12(b)(6)–type analysis. "[W]hether the plaintiff has stated a valid state law cause of action depends upon and is tied to the factual fit between the plaintiffs' allegations and the pleaded theory of recovery." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir.1999). Here,

the only specific allegation made against the Auditor is that on June 1, 2013, the Auditor, through Halliburton, "performed an audit of LOS, Inc.'s practices and procedures, and informed LOS, Inc. that it was non-compliant."[5] [Doc. 1-1 at ¶ 3]. Other than the foregoing statement, the only factual reference to the Auditor is that he jointly caused Plaintiffs' damages with Halliburton. *Id.* at ¶¶ 8-9. These allegations do not "meet the heightened federal pleading standard for fraud." *International Energy Ventures Mgmt., L.L.C. v. United Energy Group, Ltd.*, 818 F.3d 193, 209 (5th Cir. 2016) (citing FED. R. CIV. P. 9(b)); *see also U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) ("At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where, and how of the alleged fraud") (internal quotation marks omitted); *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550 (5th Cir. 2010). Further, there are no factual allegations pleaded that would indicate the Auditor might be found personally liable for the conduct alleged, as there is no indication he was acting beyond the scope of his employment. *See e.g. Bohnsack v. Varco, L.P.*, 668 F.3d 262, 273 (5th Cir. 2012); *Home Life Ins. Co., New York v. Equitable Equipment Co., Inc.*, 680 F.2d 1056, 1059-60 (5th Cir. 1982).[6]

### E. Misrepresentation

The Court finds Plaintiffs have failed to adequately plead a claim of negligent misrepresentation against the Auditor, because: (1) there are no factual allegations pleaded that would indicate the Auditor might be found personally liable for the conduct alleged, as there is no

---

[5]Thereafter, Halliburton (and <u>not</u> the auditor) assigned LOS an audit score of zero and posted this score on its website. [Doc. No. 1-1 at ¶ 5].

[6]Further, to the extent Plaintiffs' claim of fraud is based upon Louisiana law, the claim appears to have prescribed based on the face of the petition, as such a claim has a one year prescriptive period. *See e.g. Clark v. Constellation Brands, Inc.*, 348 Fed.Appx. 19, *2 (5th Cir. 2009) (citing *Trinity Universal Ins. Co. v. Horton*, 756 So.2d 637 (La.App. 2000).

indication he was acting beyond the scope of his employment, s*ee e.g. Home Life Ins. Co., New York* at 1059-60; *Celtic Life Ins. Co. v. Coats*, 885 S.W.2d 96, 99 (Tex. 1994); and (2) such a claim appears to have prescribed on the face of the petition. *See e.g. Kansa Reinsurance Co., Ltd. v. Cong. Mortgage Corp. of Texas*, 20 F.3d 1362, 1371 (5th Cir.1994); *Lanzas v. American Tobacco Co., Inc.*, 46 Fed.Appx. 732, *2 (5th Cir. 2002); La. Civ. Code art. 3492.

With regard to intentional misrepresentation or delictual fraud, under Louisiana law the elements of such a claim are: "(1) a misrepresentation of a material fact; (2) made with intent to deceive; and (3) causing justifiable reliance with resultant injury." *Kadlec Med. Ctr. v. Lakeview Anesthesia Associates*, 527 F.3d 412, 418 (5th Cir.2008); *see also Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 627 (5th Cir. 1999). To state a claim of intentional misrepresentation under Texas law, a plaintiff must sufficiently allege: "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation, and (6) the party thereby suffered injury." *Lane v. Halliburton*, 529 F.3d 548, 564 (5th Cir. 2008); *see also Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir.2010).

Again, the only allegation in the petition against the Auditor is that, "On or about June 1, 2013, Auditor, through Halliburton, performed an audit of LOS, Inc.'s practices and procedures, and informed LOS, Inc. that it was non-compliant." [Doc. No. 1-1 at ¶ 3]. The petition further alleges that after hiring a third-party investigator, Plaintiffs discovered "the audit was false." *Id.* at ¶¶ 6-7. Plaintiffs do not allege they relied upon the Auditor's statements, or that any such reliance

was justified. Plaintiffs also fail to disclose how this alleged misrepresentation was intended to deceive Plaintiffs. The Court finds these allegations do not meet the particularity requirements of Rule 9(b). *See e.g. Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986) ("An allegation of intentional misrepresentation is essentially an allegation of fraud," and as such, it is subject to the particularity requirements of Rule 9(b)). Additionally, there are no factual allegations pleaded that would indicate the Auditor might be found personally liable for the conduct alleged, as there is no indication he was acting beyond the scope of his employment. *See e.g. Celtic Life Ins. Co.*, 885 S.W.2d at 99. Finally, to the extent Plaintiff alleges a claim of intentional fraud under Louisiana law, such a claim appears to have prescribed on the face of the petition.[7] Accordingly, the Court finds Plaintiffs have failed to state a claim against the Auditor for intentional misrepresentation.

## F. Business Defamation

To maintain a defamation action under Louisiana law, a plaintiff must prove the following: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Kennedy v. Sheriff of E. Baton Rouge*, 935 So.2d 669, 674 (La. 2006); *Henry v. Lake Charles American Press, L.L.C.*, 566 F.3d 164, 181 (5th Cir. 2009). "The fault requirement is generally referred to in the jurisprudence as malice, actual or implied." *Kennedy* at 674. Under Texas law, the elements of a claim for defamation include: "(1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases." *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015). When the

---

[7]La. Civ. Code art. 3492; s*ee also Clark*, 348 Fed.Appx. at *2.

allegedly defamed person is a private individual (as opposed to a public figure or official), only negligence is required. *Id.*

Plaintiffs have made no allegation that the Auditor published any defamatory statement regarding Plaintiffs.[8] Additionally, Plaintiffs have failed to plead "malice, actual or implied" as required to state a claim of defamation under Louisiana law.[9]

### G.      Loss and Destruction of Business

The Court is unaware of the existence of a claim for "loss and destruction of business" under either Texas or Louisiana law, and Plaintiffs did not address this claim in their briefing. Nevertheless, Louisiana courts do recognize a cause of action for tortious interference with business. *Junior Money Bags, Ltd. v. Segal*, 971 F.2d 1, *10 (5th Cir. 1992). This delict is "based on the principle that the right to influence others not to deal is not absolute." *Id.* "Louisiana law protects the businessman from 'malicious and wanton interference,' permitting only interferences designed to protect a legitimate interest of the actor." *Id.* (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 601 (5th Cir. 1981)). "Thus, the plaintiff in a tortious interference with business suit must show by a preponderance of the evidence that the defendant improperly influenced others not to deal with the plaintiff." *Id.* (quoting *McCoin v. McGehee*, 498 So.2d 272, 274 (La.App. 1st Cir.1986)). In this matter, Plaintiffs make no allegations that the Auditor

---

[8] The only allegation of publication of a purportedly defamatory statement is against Halliburton. [Doc. No. 1-1 at ¶ 5].

[9] Further, to the extent Plaintiffs' claim of defamation is based upon Louisiana law, the claim appears to have prescribed based on the face of the petition, as such a claim has a one year prescriptive period. *See e.g. Clark v. Wilcox*, 928 So.2d 104, 112 (La.App. 2005); *Ameen v. Merck & Co., Inc.*, 226 Fed.Appx. 363, *5 (5th Cir. 2007) (remand was proper where defamation claim against non-diverse defendant was barred by applicable one-year statute of limitations, and alternatively, for failure to set forth sufficient allegations to state a claim).

improperly influenced any third party not to do business with Plaintiffs, and therefore, Plaintiffs have failed to state a claim against the Auditor under this theory. Additionally, the claim appears to have prescribed on the face of the petition. La. Civ. Code art. 3492.

Texas recognizes a claim for tortious interference with prospective business relations. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 712-13 (Tex. 2001). To prevail on such a claim a plaintiff must show:

> (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful[10]; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.

*Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex.2013). In this matter, Plaintiffs have failed to allege any facts indicating the Auditor acted with a conscious desire to prevent any prospective business relationship from occurring or that he knew the interference was certain or substantially certain to occur as a result of the conduct. Additionally, Plaintiffs have failed to show the Auditor would face any independent liability for such a claim, as there are no allegations indicating the Auditor was acting beyond the course and scope of his employment. Finally, this claim appears to have prescribed based on the face of the petition. *See e.g. Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 202 (Tex.2011).

## H.     Deceptive Trade Practices and Unfair Competition

---

[10]For conduct to be "independently tortious," it must be "conduct that would violate some other recognized tort duty," such as a breach of fiduciary duty, assault, etc. *Sturges*, 52 S.W.3d at 713. "Thus defined, an action for interference with a prospective contractual or business relation provides a remedy for injurious conduct that other tort actions might not reach . . . , but only for conduct that is already recognized to be wrongful under the common law or by statute." *Id.*

The Louisiana Unfair Trade Practices Act ("LUTPA") provides in pertinent part, "Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice . . . , may bring an action . . . to recover actual damages." La. R.S. § 51:1409(A). LUTPA does not specifically define what actions constitute unfair or deceptive trade practices, but rather, leaves "the determination of what is an 'unfair trade practice' to the courts to decide on a case-by-case basis." *Chemical Distributors, Inc. v. Exxon Corp.*, 1 F.3d 1478, 1485 (5th Cir. 1993) (quoting *Marshall v. Citicorp Mortg., Inc.*, 601 So.2d 669, 670 (La.App. 1992)). Nevertheless, "[t]he courts have repeatedly held that, under this statute, the plaintiff must show the alleged conduct 'offends established public policy and ... is immoral, unethical, oppressive, unscrupulous, or substantially injurious.'" *Cheramie Servs., Inc. v. Shell Deepwater Prod, Inc.*, 35 So.3d 1053, 1059 (La. 2010) (quoting *Moore v. Goodyear Tire & Rubber Company*, 364 So.2d 630, 633 (La.App. 1978)); *NOLA Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 553 (5th Cir. 2015). "[T]he range of prohibited practices under LUTPA is extremely narrow." *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993). "Fraud, misrepresentation, deception, and similar conduct is prohibited; mere negligence is not." *Id.* (additionally noting LUTPA "does not provide an alternate remedy for simple breaches of contract").

To state a claim for a violation of LUTPA, a plaintiff must allege: (1) it has suffered an ascertainable loss of money or moveable property; and (2) the loss must be "a result of the use or employment by another person of an unfair or deceptive method, act, or practice." La. R.S. § 51:1409(A); *see also Hurricane Fence Co., Inc. v. Jensen Metal Products, Inc.*, 119 So.3d 683, 688 (La.App. 2013). In this matter, Plaintiffs have not included enough details to determine

whether the actions alleged are "immoral, unethical, oppressive, unscrupulous, or substantially injurious" so as to give rise to a LUTPA claim. Additionally, this claim appears to have prescribed on the face of the petition. *See* La. R.S. 51:1409(E).

Plaintiffs contend the Auditor violated the Texas Deceptive Trade Practices Act ("DTPA"). [Doc. No. 11-1 at 16]. The DTPA "grants consumers a cause of action for false, misleading, or deceptive acts or practices." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996). "The DTPA defines a 'consumer' as 'an individual ... who seeks or acquires by purchase or lease, any goods or services.'" *Id.* (quoting Tex.Bus. & Com.Code § 17.45(4)). The elements of a DTPA cause of action are: (1) the plaintiff is a consumer; (2) the defendant engaged in false, misleading or deceptive acts; and (3) these acts constituted a producing cause of the consumer's damages. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995). To be deemed a "consumer" under the DTPA, one must be "an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services, except that the term does not include a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more." TX BUS & COM § 17.45 (West). Here, the allegations show LOS, Inc. was a *provider of services*, rather than a consumer. Further, there are no factual allegations set forth indicating the Auditor would be personally liable, as none of the allegations indicate he was acting beyond the course and scope of his employment. Accordingly, the Court finds this claim has been inadequately pleaded.

## I. Antitrust Violations

In their memorandum in support of their motion to remand, Plaintiffs assert they have

stated a claim for antitrust violations against the Auditor, arguing:

> As detailed in the Complaint, Auditor's affirmative acts, omissions, and representations made on his behalf or on behalf of Halliburton all document that Auditor was, in fact, a key player in resulting loss and destruction of LOS, Inc.'s business. Moreover, the Complaint alleges that Auditor and Halliburton acted concurrently to destroy Plaintiff's business. These allegations raise the possibility of finding that Auditor and Halliburton conspired to monopolize the non-destructive testing market by excluding LOS, Inc. from the market.

[Doc. No. 11-1 at 18].

The problem with Plaintiffs' argument is that none of these allegations appear in the petition, particularly the allegations of an alleged conspiracy "to monopolize the non-destructive testing market." With regard to Louisiana law, Plaintiff's memorandum cites the Court to La. R.S. 51:122 and 51:123.[11] These statutes are virtually identical to the Sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. § 1, et seq., and federal analysis of the Sherman Antitrust Act is therefore persuasive, although not controlling. *Louisiana Power and Light Co. v. United Gas Pipe Line Co.*, 493 So.2d 1149, 1158 (La. 1986); *HPC Biologicals, Inc. v. UnitedHealthcare of Louisiana, Inc.*, 194 So.3d 784, 792-93 (La.App. 2016). To properly plead the elements of a claim under Section 122, a plaintiff must allege that a defendant conspired with another party. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 602 (5th Cir. 1981).[12] To satisfy the conspiracy element, a plaintiff must show "that the defendants engaged in concerted action, defined as having 'a conscious

---

[11]La. R.S. 51:122 provides, "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in this state is illegal." La. R.S. 51:123 provides, "No person shall monopolize, or attempt to monopolize, or combine, or conspire with any other person to monopolize any part of the trade or commerce within this state."

[12]For purposes of federal law, a corporation cannot conspire with its officers or employees. *Dussouy* at 603. However, the Fifth Circuit in *Dussouy* held that under Louisiana law there are circumstances which can allow such a conspiracy. *Id.* at 604 (citing *Tooke & Reynolds v. Bastrop Ice & Storage*, 135 So.2d 239 (La.1931)).

commitment to a common scheme designed to achieve an unlawful objective.'" *HPC Biologicals* at 793 (quoting *Marucci Sports, L.L.C. v. National Collegiate Athletic Association*, 751 F.3d 368, 373-74 (5th Cir. 2014)). "A complaint must at least allege the general contours of when an agreement was made, supporting those allegations with a context that tends to make said agreement plausible." *Id.*

The Court finds Plaintiffs in this matter have failed to allege that Halliburton and its Auditor entered into an agreement designed to achieve an unlawful objective with sufficient specificity to state a cause of action for an antitrust violation under Louisiana law. *See e.g. HPC Biologicals* at 704. Further, the prescriptive period for such a claim is one year. *Loew's, Inc. v. Don George, Inc.*, 110 So.2d 553 (La. 1959); *Lee v. City of Shreveport*, 58 So.3d 601, 605 (La.App. 2011); *State ex rel. Ieyoub v. Bordens, Inc.*, 684 So.2d 1024, 1026 (La.App. 1996). Accordingly, this claim appears to have prescribed based on the face of the petition.

With regard to Texas law, Plaintiffs cite the Court in their supporting memorandum to section 15.05 of the Texas Free Enterprise and Antitrust Act, Tex. Bus. Corp. Act Ann. art. 15.05. [Doc. No. 11-1 at 18]. Like its Louisiana counterpart, that statute provides that "every contract, combination, or conspiracy in restraint of trade is unlawful." *Id.* at § (a). However, Texas law follows the federal rule on this issue and holds "a company cannot conspire with its own employees as a matter of law." *Editorial Caballero, S.A. de C.V. v. Playboy Enterprises, Inc.*, 359 S.W.3d 318, 337 (Tex.App. 2012) (quoting *Red Wing Shoe Co., Inc. v. Shearer's, Inc.*, 769 S.W.2d 339, 345 (Tex.App. 1989). Accordingly, the Court finds Plaintiffs have failed to adequately state a claim for antitrust violations pursuant to Texas law.

For the reasons set forth above, the Court finds there is no reasonable basis to predict that

Plaintiffs might be able to recover against the Auditor in his personal capacity. Accordingly, the Court finds diversity jurisdiction is present over this matter, and therefore, Plaintiffs' Motion to Remand [Doc. No. 11] is DENIED. Defendant's Motion to Dismiss [Doc. No. 5] will be addressed by the Court in due course.

Monroe, Louisiana, this 8th day of August, 2018.

**ROBERT G. JAMES**
**UNITED STATES DISTRICT JUDGE**