## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| **RICHARD SIERRA ET AL** | **CASE NO. 6:17-CV-01002** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **HALLIBURTON ENERGY SERVICES, INC., ET AL.** | **MAGISTRATE JUDGE HANNA** |

## MEMORANDUM RULING

Pending before the Court is a "Rule 12(b)(6) Motion to Dismiss, Rule 12(b)(3) Motion to Dismiss or Motion to Stay and Compel Arbitration, and Alternatively, Rule 12(e) Motion for More Definite Statement" [Doc. No. 5], filed by Defendant Halliburton Energy Services, Inc. ("HESI"). By its motion, HESI seeks: (1) dismissal pursuant to Rule 12(b)(6) of all tort claims asserted by Plaintiffs Richard Sierra, Chad Venable and LOS, Inc. ("LOS") on the basis of prescription; (2) dismissal pursuant to Rule 12(b)(6) of the claims of Richard Sierra ("Sierra") and Chad Venable ("Venable") on the basis that, as shareholders, they do not have standing to directly assert claims on behalf of LOS; and (3) an order compelling arbitration and dismissing or staying LOS's contractual claims pursuant to Rule 12(b)(3). Alternatively, HESI seeks an order requiring Plaintiffs to provide a more definite statement pursuant to Rule 12(e). For the following reasons, Defendant's motion is **GRANTED IN PART and DENIED IN PART**.

I.     **Background**

Plaintiffs bring this lawsuit to recover damages allegedly resulting from an audit of LOS performed by HESI. According to the allegations set forth in the Petition, LOS and HESI entered into a Master Purchase Agreement ("MPA") whereby LOS provided non-destructive testing services to HESI. [Doc. No. 1-1 at 2] On or about June 1, 2013, HESI conducted an audit of LOS's practices and procedures and thereafter informed LOS it was non-compliant with the requirements

of the MPA. *Id.* at 3. Thereafter, HESI assigned LOS an audit score of zero and posted this score on its website, allegedly without providing LOS any advance notice or opportunity to correct the purported deficiencies. *Id.* at 4-5. According to Plaintiffs, they subsequently retained a third party to investigate the audit, and it was determined that the audit, as well as the score posted by HESI, on its website was "false." *Id.* at 7. Plaintiffs allege they lost all existing clients and work and their business was destroyed due to the publication of the erroneous score on HESI's website. *Id.* at 8-9. Four years after LOS was informed that HESI's audit revealed it to be non-compliant with the MPA, Plaintiffs filed this suit. Plaintiffs contend their damages were caused through the intentional actions and/or fault of HESI and set forth the following nine causes of action: (1) Breach of Contract; (2) Breach of Fiduciary Duty; (3) Tortious Interference with Contract; (4) Fraud; (5) Misrepresentation; (6) Business Defamation; (7) Loss and Destruction of Business; (8) Deceptive Trade Practices and Unfair Competition; and (9) Antitrust Violations. *Id.* at 11.

## II.     Standard of Review

HESI seeks dismissal of all contractual claims asserted by Sierra and Venable, as well as dismissal of all tort claims asserted by all Plaintiffs pursuant to Rule 12(b)(6). Under the Rule 12(b)(6) standard, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir.2011) (internal quotation marks omitted). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. However, conclusory allegations and unwarranted deductions are not accepted as true, and courts "are not bound to

accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint which merely "tenders naked assertions devoid of further factual enhancement" will not survive a motion to dismiss. *Iqbal* at 678 (internal quotation marks and alterations omitted). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and the pleading must contain something more than a statement of facts which merely creates a suspicion of a legally cognizable right of action. *Twombly* at 555.

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a district court generally "must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). However, "[t]he court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims." *Brand Coupon Network L.L.C v. Catalina Marketing Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). In this matter, the Master Purchase Agreement has been attached to the motion to dismiss, it is referred to in the Petition and it is central to Plaintiffs' claims. Accordingly, the Court will consider the MPA along with the pleadings.

HESI additionally seeks an order compelling arbitration and dismissing or staying LOS's contractual claims pursuant to Rule 12(b)(3). However, the Court finds the more appropriate procedural vehicle is Rule 12(b)(1).[1] Where the parties' dispute is subject to binding arbitration, "a district court lacks subject matter jurisdiction over a case and should dismiss it pursuant to

---

[1] HESI cites *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 472 n.3 (5th Cir. 2010) for its reliance upon Rule 12(b)(3). However, as noted in *Gilbert v. Donahoe*, the *Noble* court merely noted that "'[o]ur court has not previously definitively decided whether Rule 12(b)(1) or Rule 12(b)(3) is the proper rule for motions to dismiss based on an arbitration or forum-selection clause,' but declin[ed] to decide the issue." *Gilbert v. Donahoe*, 751 F.3d 303, 306 n.1 (5th Cir. 2014) (first alteration in original) (quoting *Noble* at 472 n.3).

Federal Rule of Civil Procedure 12(b)(1)." *Gilbert v. Donahoe*, 751 F.3d 303, 306 (5th Cir. 2014). "The burden of proof for a 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001); *Gilbert* at 307. To carry its burden, the party "must prove by a preponderance of the evidence that the court has jurisdiction based on the complaint and evidence." *Gilbert* at 307 (quoting *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012)). "[A] motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.* (quoting *Ramming* at 161).

**III. Analysis**

    **A. Whether Sierra and Venable Have Stated a Claim for Relief**[2]

HESI seeks dismissal of the claims of Sierra and Venable, arguing those Plaintiffs "have no personal right to recover for acts causing damage to the corporation," as they are not parties to the Master Purchase Agreement or any other contract with HESI. [Doc. No. 5-1 at 17]. According to HESI, the allegations of wrongful conduct set forth in the Petition (*i.e.*, conducting a false audit and posting a false score) are all based upon HESI's actions directed toward LOS, and not Sierra or Venable. *Id.* at 19. In light of this argument, HESI contends the claims of Sierra and Venable "are derivative of the claims of LOS, Inc.," and therefore the foregoing Plaintiffs have failed to state a claim for relief. *Id.*

---

[2] HESI does not seek to compel arbitration of the claims of Sierra and Venable. Because Sierra and Venable are not parties to the Master Purchase Agreement, as a general rule, they are not bound by any of its terms or conditions, including its "Dispute Resolution" provision. *See e.g. DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 317 (5th Cir. 2011). As discussed in further detail in Section III(B) of this Ruling, the Parties selected the law of Texas to govern LOS's "claims and disputes." While Texas law recognizes some exceptions to the rule that non-signatories to an arbitration agreement are not bound by its terms, those exceptions have not been argued, nor does the Court find them to be applicable under the facts of this case. *See e.g., Id.* at 318-19; *Hayes v. HCA Holdings, Incorporated*, 838 F.3d 605, 609-614 (5th Cir. 2016).

Plaintiffs respond that the Petition does not allege that Sierra and Venable are seeking to recover losses sustained by LOS. [Doc. No. 19 at 18]. "To the contrary, the Petition, read in the light most favorable to Plaintiffs, alleges each of the Plaintiffs suffered direct damages by HESI's conduct – apart from damages caused to LOS, Inc." *Id.* According to Plaintiffs, the fact that LOS "also suffered damages as a result of the same conduct does not render the individual Plaintiffs' claims derivative." *Id.* Accordingly, Plaintiffs contend dismissal of the claims of Sierra and Venable is inappropriate. *Id.*

As a general matter, only a corporation itself may enforce corporate claims, and the corporation's shareholders, directors and officers have no direct, personal right of action to enforce same.[3] *Joseph v. Hospital Service Dist. No. 2 of Parish of St. Mary*, 939 So.2d 1206, 1214-15 n.11 (La. 2006); 8 GLENN G. MORRIS & WENDELL H. HOLMES, LA. CIV. L. TREATISE, BUSINESS ORGANIZATIONS § 34:1. As set forth by the Louisiana First Circuit Court of Appeal:

> Ordinarily, shareholders may sue to recover losses to a corporation only secondarily through a shareholder's derivative suit. To the extent that a shareholder has any potential personal right of action, jurisprudence requires a showing of injury that is 'unique' or 'special' to that shareholder. Where a shareholder's alleged loss is the same as that which would be suffered by any other shareholder, such loss is indirect, and the shareholder has no right to sue individually. On the other hand, where a shareholder, but not the corporation, suffers a loss, such loss is direct, and the shareholder may have a right to sue individually.

*LeBlanc v. Alfred*, 185 So.3d 768, 774 (La. App. 1 Cir. 2015) (internal citations omitted); *see also Hinchman v. Oubre*, 445 So.2d 1313, 1317 (La. App. 5 Cir. 1984) ("A person who conducts

---

[3] The parties appear to agree this issue is governed by Louisiana law, as they rely solely upon Louisiana jurisprudence and federal jurisprudence interpreting same. The Court agrees Louisiana provides the applicable body of law. Whether a claim is derivative or direct is determined by state law. *Atkins v. Hibernia Corp.*, 182 F.3d 320, 323 (5th Cir. 1999); *see also* 8 GLENN G. MORRIS & WENDELL H. HOLMES, LA. CIV. L. TREATISE, BUSINESS ORGANIZATIONS § 34:1 at n.5 ("The power of shareholders to maintain derivative suits is considered to arise under and to be governed in all substantive respects by the state law of their state of incorporation . . . ."). As LOS's state of incorporation is Louisiana, *see* Doc. No. 53 at 7, the Court will apply Louisiana law to this issue.

business in corporate form and reaps the benefits of incorporation cannot sue individually for damages incurred by the corporation.").

A review of the Master Purchase Agreement in this matter reveals no obligation owed by HESI to Venable or Sierra, nor any direct benefit flowing to Venable or Sierra individually. Additionally, as is evident from the Petition, all tort claims asserted by Venable and Sierra seek recovery for damages incurred by LOS. As shareholders, employees, and/or officers of LOS, Venable and Sierra have no right of action independent of LOS to assert such claims. *Joe Conte Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.,* 689 So.2d 650, 653 (La. App. 4 Cir. 1997). Accordingly, LOS is the proper party to pursue this lawsuit, as Sierra and Venable's damages are purely derivative of LOS's claims. *Id.* at 653, 654 (shareholders and officers could not recover for interference with contract, conspiracy, violations of LUTPA or the Louisiana antitrust laws, as such claims belonged to the corporation); *Hinchman* at 1317 (contractual claims for damages for loss of income and loss of business contacts belonged to corporation, not stockholder); *Catfish Cabin of Monroe, Inc. v. State Farm Fire and Cas. Co.*, 811 So.2d 222, 225 (La. App. 2 Cir. 2002) (only corporation, not shareholders, could assert claim of defamation, where alleged defamatory statements were made against the corporation and not the shareholders).

### B. Whether the Master Purchase Agreement Requires Arbitration of LOS's Claims

HESI argues, to the extent LOS's claims are based on the Master Purchase Agreement, that agreement requires the claims to be submitted to arbitration. [Doc. No. 5-1 at 19]. According to HESI, because LOS "waived its right to recourse in the courts" for any claims arising out of the MPA, "LOS, Inc.'s contractual claims should be dismissed or alternatively, this matter should be stayed and LOS, Inc. should be compelled to submit its claims to arbitration." *Id.* at 20. In response, LOS argues the arbitration provision of the MPA is "adhesionary," and therefore that provision is

unenforceable. [Doc. No. 19 at 7]. In the alternative, LOS argues Defendant's motion to compel arbitration is premature, as the parties have not complied with the MPA's requirement that they first engage in mediation. *Id.* at 12, 14.

The provision of the Master Purchase Agreement in dispute is set forth in a section entitled "Governing Law, Claims and Dispute Resolution." That provision reads in pertinent part as follows:

> **24.2** For Work to be performed in the USA, but not offshore in the Gulf of Mexico, this Agreement will be governed by the laws of Texas, exclusive of conflict of laws principles. Seller [LOS] agrees that any claims and disputes submitted by Seller which cannot be resolved through direct negotiation between [HESI] and Seller will be submitted to mediation and, if not successful, to binding arbitration, both proceedings to be conducted by the American Arbitration Association in Houston, Texas, in accordance with its Commercial Rules and Procedures.

[Doc. No. 5-2 at 7; *see also* Doc. No. 5-1 at 20; Doc. No. 24 at 5].

The Court finds LOS's second argument–that the motion to compel arbitration is premature–to be without merit. According to LOS, pursuant to the Parties' Dispute Resolution provision LOS can only be compelled to arbitrate after direct negotiations and mediation fail. As set forth above, if the Parties cannot resolve "any claims and disputes" submitted by LOS through direct negotiation, they must submit those claims to mediation and, if unsuccessful, to binding arbitration.[4] [Doc. No. 5-2 at 7]. The Court finds the fact that the Dispute Resolution provision includes a requirement that the parties first attempt a nonbinding method of resolution before incurring "the not insignificant costs associated with arbitration" does not "strip an arbitration agreement of its effect." *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 238 (5th Cir. 2013); *see also Grand Isle Shipyards, Inc. v. Black Elk Energy, LLC*, 2013 WL 3974536 (E.D.La.). While it

---

[4] "[B]oth proceedings [*i.e.*, mediation and arbitration] are to be conducted by the American Arbitration Association . . . ." [Doc. No. 5-2 at 7].

is true the contract requires negotiation and mediation prior to arbitration, as set forth below, Plaintiff's preferred course of action–a court proceeding–is not an available remedy under the terms of the Parties' agreement. Rather, the Parties agreed that arbitration would be the final, binding method of resolution. Accordingly, the Court turns its attention to the enforceability of the dispute resolution provision.

In accordance with the Parties' choice of law set forth in the MPA, the Court will apply the substantive law of Texas. Where an arbitration agreement contains a clause designating Texas law, but does not exclude the Federal Arbitration Act ("FAA"), "the FAA and Texas law, including that state's arbitration law, apply concurrently because Texas law incorporates the FAA as part of the substantive law of that state." *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 338 n.7 (5th Cir. 2004) (citing *Pedcor Mgmt. Co., Inc. Welfare Benefit Plan v. Nations Personnel of Texas, Inc.*, 343 F.3d 355, 361 (5th Cir. 2003)). However, to the extent Texas arbitration law conflicts with the FAA, Texas law is preempted by the FAA. *Miller v. Public Storage Management, Inc.*, 121 F.3d 215, 219 (5th Cir. 1997); *see also Jones v. Halliburton Co.*, 583 F.3d 228, 234 (5th Cir. 2009).

A two-step analysis is employed to determine whether a party may be compelled to arbitrate. *Jones* at 233. First, a court must decide whether the parties entered into an arbitration agreement. *Id.*; *Archer and White Sales, Inc. v. Henry Schein, Inc.*, 878 F.3d 488, 492 (5th Cir. 2017). "This inquiry is one of pure contract formation, and it looks only at whether the parties 'form[ed] a valid agreement to arbitrate some set of claims.'" *Archer* at 492 (alterations in original) (quoting *IQ Prods. Co. v. WD-40 Co.*, 871 F.3d 344, 348 (5th Cir. 2017)). The second step is a determination of whether the dispute in question falls within the scope of the arbitration agreement. *Jones* at 234; *Archer* at 492. The second inquiry is a matter of contract interpretation. *Kubala v.*

*Supreme Production Services, Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). "Ordinarily both steps are questions for the court." *Id.* at 202. However, when an arbitration agreement contains a "delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes." *Id.*

Delegation clauses "transfer the court's power to decide arbitrability questions to the arbitrator." *Id.* "[A] valid delegation clause requires the court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues." *Id.* at 202. Where an arbitration agreement contains a delegation clause, the court's analysis is limited as follows:

> [The court] performs the first step—an analysis of contract formation—as it always does. But the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated. If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases.

*Id.* (citation omitted).

"Under the FAA, parties are free to delegate questions to an arbitrator, including questions regarding the validity and scope of the arbitration provision itself." *Arnold v. Homeaway, Incorporated*, 890 F.3d 546, 551 (5th Cir. 2018). "However, courts may not assume that parties have agreed to arbitrate threshold questions absent clear and unmistakable evidence of intent to do so. *Id.* at 551-52. "[G]enerally, stipulating that the AAA Rules will govern the arbitration of disputes constitutes such 'clear and unmistakable' evidence." *Id.* at 552 (citing *Petrofac, Inc. v. Dyn-McDermott Petroleum Operations Co.*, 687 F.3d 671, 674-75 (5th Cir. 2012)).

Because the Master Purchase Agreement at issue in this matter "expressly incorporate[s] the AAA rules, the parties have clearly and unmistakably demonstrated their intent to delegate" to the arbitrator the power to rule on the validity and scope of the arbitration provision. *Id.* at 553. Accordingly, LOS's contention that the arbitration provision is unenforceable because it is

adhesionary–a question addressing the arbitration agreement's validity–is for the arbitrator to decide. *Id.* at 554; *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71-72 (2010).[5] Additionally, although HESI seeks dismissal of LOS's tort claims on the basis of prescription, the Court finds such relief to be inappropriate. In light of the delegation clause of the arbitration agreement, the Court finds it is for the arbitrator to decide whether the tort claims, all of which arise out of the audit provision of the MPA, fall within the scope of the arbitration agreement.[6]

Having concluded there is a contract between the Parties which contains a putative arbitration provision, and that the Parties have agreed to delegate threshold questions about the arbitration provision to the arbitrator, the Court need not reach the remainder of the issues briefed by the parties. In accordance with 9 U.S.C. § 3, this matter is STAYED until the arbitration proceedings are concluded.[7] *Tittle v. Enron Corp.*, 463 F.3d 410, 417 n.6 (5th Cir. 2006).

## IV. Conclusion

For the reasons stated herein, HESI's Motion to Dismiss and Motion to Stay and Compel Arbitration [Doc. No. 5] is **GRANTED IN PART and DENIED IN PART**. The motion is **GRANTED** to the extent it seeks dismissal of the claims of Sierra and Venable; the motion is **GRANTED** to the extent it seeks an order compelling arbitration and staying LOS's claims; and

---

[5] *See also Arnold*, 890 F.3d at 552 (noting the 5th Circuit applies the *Petrofac* rule to cases involving "unequal bargaining power" between the parties, despite the "adhesive nature" of such contracts).

[6] *See e.g. Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993) ("arbitration clauses containing the 'any dispute' language . . . are of the broad type"; "If the clause is broad, the action should be stayed and the arbitrators permitted to decide whether the dispute falls within the clause"); *Mayton v. Tempoe, LLC*, 2017 WL 2484849, *4 (W.D.Tex.).

[7] Under certain circumstances, it is within the court's discretion to dismiss, rather than stay, a case referable to arbitration. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). Entry of a stay rather than dismissal may be appropriate where "the district court perceives that it might have more to do than execute the judgment once arbitration has been completed." *Apache Bohai Corp., LDC v. Texaco China, B.V.*, 330 F.3d 307, 309 (5th Cir. 2003). As the arbitrator in this matter must first find that the claims at issue are to be arbitrated before reaching the merits of the claims, the Court finds the better course of action is to stay this matter rather than dismiss it.

the motion is **DENIED** to the extent it seeks dismissal of the tort claims of LOS, as the Court finds those claims must be submitted to arbitration.

Prior to submitting the claims to arbitration, the parties are **ORDERED** to directly negotiate LOS's claims and disputes and, if unsuccessful, to submit same to mediation and, if still unsuccessful, to submit the claims and disputes to arbitration.[8] The parties are further **ORDERED** to schedule their mediation and/or arbitration within sixty (60) days of issuance of this Ruling.

Pursuant to 9 U.S.C. § 3, this case is **STAYED** pending the completion of negotiations, mediation and/or arbitration. On or before 120 days after issuance of this Ruling, the parties are **ORDERED** to jointly file a notice with the Court advising of the progress of their dispute resolution proceedings.

MONROE, LOUISIANA, this 27th day of August, 2018.

**ROBERT G. JAMES**
**UNITED STATES DISTRICT JUDGE**

---

[8] If the Parties can reach agreement, they may waive direct negotiation and/or mediation.